## Commonwealth *v.* Melissari, Appellant.

Argued September 30, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Frank A. McGuigan,* for appellant.—Plea of former acquittal should be sustained.

An improper remark of a witness may be just as much ground for withdrawing a juror as an improper remark of counsel: Surface v. Bentz, 228 Pa. 610; Hale v. Hale, 32 Pa. Superior Ct. 37.

The remarks of the court as to the brutal character of the killing prejudiced the defendant.

*Thomas M. Lewis,* District Attorney, with him *Herman J. Goldberg,* Assistant District Attorney, for appellee.—The averment of the defendant in his special plea of former acquittal that the killing of Campbell and Reilly were simultaneous, must be disregarded and the record of the former trial considered only in passing on this special plea: Com. v. Greevy, 271 Pa. 95; Com. v. Valotta, 279 Pa. 84; Com. v. Brown, 264 Pa. 85.

Since it was shown that defendant had taken part in the crime with others, the door was open wide to the Commonwealth to show his previous connection with those who are said to have been associated with him in the commission of the offense, on the same principle that made the evidence admissible: Com. v. Fasci, 287 Pa. 1; Com. v. Sparduti, 278 Pa. 37.

It is not error to admit evidence that the person mentioned by defendant was in jail at the time of the trial, where such evidence is introduced merely to explain the failure of the Commonwealth to produce the man as a witness: Com. v. Vasbinder, 292 Pa. 506; Com. v. McMeen, 114 Pa. 300; Com. v. Emery, 273 Pa. 517; Com. v. Cicere, 282 Pa. 492.

The court did not place undue stress upon the evidence of the Commonwealth and the charge of the court was not argumentative: Com. v. Quaranta, 295 Pa. 264; Com. v. Ronello, 251 Pa. 329; Com. v. Elliott, 292 Pa. 16; Com. v. Tenbroeck, 265 Pa. 251.

OPINION BY MR. JUSTICE SADLER, November 25, 1929:

The defendant, Melissari, indicted for the killing of one Reilly, on February 28, 1928, was convicted of murder of the first degree, the jury fixing the punishment at life imprisonment. Motions in arrest of judgment and for a new trial, averring that he was entitled to an absolute discharge from custody, or that a rehearing of the case should be awarded, were dismissed. He was sentenced in accordance with the finding, and now appeals from the judgment entered, assigning various reasons for the reversal of the action of the court. A brief statement of the facts is requisite to a proper understanding of the complaints made.

Campbell and Reilly, both murdered, were driving in an automobile in the City of Pittston on the day in question. When their machine had been turned to the east on a main city street, it was followed by a second car, which had been standing to the west on the same highway. The latter, occupied by three men, one of whom, the jury has found, was the defendant, pursued the first for a short distance, forcing it against the curb, where those within were subjected to a fusillade of shots from the second car. Eighteen wounds were inflicted on the body of Reilly, the back of his skull being blown off, and his death resulted, as did that of Campbell. The Peerless car, in which the assailants were riding, was then driven rapidly toward Scranton. On the flight, the defendant was recognized as one of the passengers, and DeLucca, still a fugitive, as another. The third person, called in the record "Little Jimmy," has also not been apprehended. None of those named were residents of Pittston. About four miles from the place of shooting, the murder car, containing a revolver, two automatic shotguns and some ammunition, was abandoned. Its previous possession was traced to DeLucca, and the evidence showed its procurement by him and defendant from a dealer in Scranton shortly prior to the killing. Defendant boarded in the same house with DeLucca,

having come there a few days before from New York City in his own automobile. On the morning after the murder, Melissari departed for Port Chester, New York, from which place he fled to New Orleans, remaining for 17 or 18 days. Upon his return to the first-named town, on March 28th, he was arrested.

In September, defendant was brought to trial for the murder of Campbell. To the surprise of the Commonwealth, the woman in whose house he had boarded in Scranton, then for the first time, though previously interviewed, and examined in court as to the occurrence, declared that defendant was in her dwelling at the time of the killing, and a verdict of not guilty of the offense charged resulted. At the following term, Melissari was prosecuted for the murder of Reilly. Preliminarily, he entered a special plea, setting forth the previous acquittal in the Campbell Case, averring that, in effect, the same charge had been there presented, as appeared by reference to the record in the former proceeding, and, therefore, insisted that prosecution for the killing of Reilly, which took place in the same affray, was barred. The Commonwealth filed a demurrer to this plea of former acquittal, which was sustained by the court in banc. This action is the foundation of the first assignment of error presented here.

The demurrer admitted only such facts as were properly pleaded. The evidence in the first case is not before us, and we can consider only the record as it appears: Com. v. Greevy, 271 Pa. 95, 99. It discloses that Melissari was found not guilty of the murder of Campbell, but the present charge is for the killing of Reilly, a different individual, though the homicide occurred at the same time. The rule controlling in such case has been stated in Com. v. Valotta, 279 Pa. 84. There it appeared the defendant killed, in one combat, two individuals, and his conviction, in the first instance, of murder of the second degree, was held no bar to a subsequent finding of guilt in the first degree, for killing the other, the

court saying, page 88: "Where two persons are killed by separate shots or strokes, although in the same riot or affray, an acquittal or conviction of one homicide is no bar to an indictment for the other, as they are distinct acts." Likewise, verdicts have been sustained of first and second degrees, respectively, where two were killed at the same time, and separate indictments for the killing of each of those deceased were tried together: Com. v. Brown, 264 Pa. 85. It was remarked by Mr. Justice FRAZER, in the case last cited (page 93): "While it is difficult to discover a reasonable basis for distinction between the verdicts in the two cases, the degree of the crime in each case was for the jury, and the fact that the conclusions differed is no reason for reversal." Like determinations have been reached in other jurisdictions, under similar circumstances: Com. v. Browning, 146 Ky. 770, 143 S. W. 407; People v. Majors, 65 Cal. 138, 3 Pac. 597; Morris v. Territory (Okla.), 99 Pac. 760; State v. Evans, 32 W. Va. 417, 10 S. E. 792; State v. Robinson (Wash.), 41 Pac. 884; 16 C. J. 283.

The murders of Reilly and Campbell were separate and distinct offenses, though occurring in the same assault. The evidence produced by the Commonwealth was insufficient to convince the jury of guilt at the trial for the murder of the latter, yet it was satisfied by the proof offered, beyond a reasonable doubt, as to the responsibility of defendant for the murder of Reilly. The testimony may have differed in the second case, as here asserted by the Commonwealth, or may have been supplemented by proof of additional facts, though a comparison is impossible since the complete record of the first trial is not before us. It does appear in the present proceeding that the veracity of the witnesses here called to establish an alibi was seriously impeached. That the jury was convinced of Melissari's guilt, as charged, is shown by the verdict rendered, and an examination of the evidence presented discloses ample justification for the conclusion reached.

The demurrer to the special plea of former acquittal having been sustained, we think properly, the general plea of not guilty was entered, and the case proceeded to hearing. It is contended error was committed in the admission of testimony at the trial, and this complaint forms the basis for the second assignment. Defendant had denied acquaintance with DeLucca, identified as one of the occupants of the Peerless car, driven by those who killed Reilly. That the two had been closely associated prior to February 28th is clear from the evidence in the case. They not only boarded together in Scranton, but jointly aided in the selection of the automobile used at the time of the murder. To show that the two named were known to each other, an officer was called, who testified that he had seen them together in Harrison, New York, prior to the time in question. In reply to a query made, the witness stated, he observed both in a police cell in the town designated. Counsel asked that this reply be stricken from the record, and it was so ordered by the court. Later, in the charge, the jury was again directed to disregard this answer.

A motion to withdraw a juror, because of the response, was denied. It is now claimed that this refusal was error, prejudicing the defendant, since the incidental statement, that he was seen in a police station, was a violation of his rights assured by the Act of March 15, 1911, P. L. 20, which forbids, with certain exceptions not applicable here, the questioning of one accused of crime, who voluntarily becomes a witness, as to whether he has before been convicted or charged with any offense. The defendant was not here asked as to a former criminal act, nor was there any effort on the part of the Commonwealth to show that he had previously been indicted or held for any unlawful conduct. It was competent to prove the fact of the previous association of Melissari and DeLucca, the latter shown to have taken part in the murder of Reilly (Com. v. Fasci, 287 Pa. 1), and defendant's false denial of this important fact was

proper for the consideration of the jury in passing upon his guilt: Com. v. Jones, 297 Pa. 326. The fact that the witness fixed the place, where he saw them together, as in a police cell, does not constitute a breach of the act referred to: Com. v. Brown, supra; Com. v. Cicere, 282 Pa. 492; Com. v. Vasbinder, 292 Pa. 506. See also Com. v. Parker, 294 Pa. 144. Even if there had been a technical disregard of the statute, and we cannot see that there was, yet this would not constitute reversible error, since the objectionable answer was immediately stricken from the record, and the jury later instructed, in the charge, to disregard it: Com. v. Emery, 273 Pa. 517; Com. v. James, 294 Pa. 156; Com. v. Brown, supra.

The sixth assignment complains of a statement, found in the opening of the court's charge, in which the trial judge declared that the killing of Reilly was cruel and brutal, without cause or justification. The evidence shows this to be true, and the murder was so described by counsel for appellant on oral argument. No opinion was expressed that the defendant was the guilty actor, and the question of his responsibility was fairly submitted to the jury: Com. v. Tenbroeck, 265 Pa. 251. A definition of the various degrees of murder followed the words complained of, with clear instructions as to the power of the jury to convict or acquit, and the matters to be considered in reaching their determination were given.

The facts proven on both sides were fully presented, and in such manner as to furnish no ground of complaint to defendant. No undue stress was placed on the Commonwealth's testimony as opposed to that of the defendant. The evidence was largely circumstantial, and justified the jury in finding that Melissari and DeLucca were two of the three engaged in the killing, having secured a car for this purpose, placing the license plates of another thereon, driving to the scene of the shooting, taking part therein, and thereafter fleeing, finally abandoning the car. The sufficiency of the identification of

defendant as a participant, sworn to by a disinterested witness, raised a question of fact for the jury under the testimony. The defendant relied upon his positive denial of guilt and witnesses to establish an alibi. The evidence to support his contention was recited to the jury, whose verdict shows it was rejected as untrustworthy.

An examination of the record discloses sufficient proof of all the ingredients necessary to convict of murder of the first degree, and warrants a finding that defendant was guilty of the crime charged. No trial error has been pointed out justifying a reversal, and all of the errors assigned, including those based upon the refusal to arrest judgment, grant a new trial, and the sentence imposed, in addition to the first, second and sixth assignments, above specifically commented upon, are overruled.

The judgment is affirmed, and it is ordered that the record be remitted to the court below to the end that the sentence imposed may be carried out.